IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.     21-cr-00421-CMA

UNITED STATES OF AMERICA,

       Plaintiff,

v.

JOE THOMPSON,

       Defendant.
_____

### DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT
_____

Joe Thompson, through undersigned counsel, respectfully notes his objections to the Presentence Report. In support of his objections, Mr. Thompson states as follows:

### Introduction

According to the Presentence Report ("PSR"), the advisory guidelines recommend a sentence of 70 to 87 months in this case.[1] But the Probation Office incorrectly applied two guideline provisions to arrive at this calculation. First, the PSR assigned Mr. Thompson a starting base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A). PSR ¶¶ 18-20. But because his prior criminal conviction for second degree assault with a deadly weapon, in Larimer County case 2016CR1037, is not a qualifying crime of violence (or a controlled substance offense) as that term is defined in U.S.S.G. § 4B1.2(a), Mr. Thompson's starting base offense level is 14 pursuant to § 2K2.1(a)(6)(A). Second,

---

[1] Mr. Thompson has previously, pursuant to the Court's order during the sentencing hearing (ECF No. 21), filed a sentencing statement requesting a sentence of 30 months. *See* ECF No. 24. He will separately file a motion for a variance in the event the Court ultimately accepts the guideline range suggested by the Probation Office in whole or in part.

the PSR erroneously assessed a four-level enhancement pursuant to § 2K2.1(b)(6)(B), based on an allegation that Mr. Thompson committed a felony robbery and/or menacing offense several weeks prior to his arrest in this case. PSR ¶¶ 21-22. Mr. Thompson is pending trial for this conduct in Denver Court case number 2021 CR 6650 (*id.* at ¶22), where he has pled not guilty and enjoys the ongoing presumption of innocence. Given the circumstances, the Court should not apply a four-level enhancement pursuant to § 2K2.1(b)(6)(B) here.[2]

After making these corrections to the guideline calculations, the Court should find that Mr. Thompson's adjusted offense level is 12 (base offense level of 14; minus 2 for prompt acceptance of responsibility). Because Mr. Thompson falls within criminal history category V (PSR ¶ 41), the correct guideline range in his case is thus 27 to 33 months of incarceration.

<u>**Objections Impacting the Guideline Calculation**</u>

**I.    Because Mr. Thompson does not have a prior conviction for a crime of violence as that term is defined in U.S.S.G. § 4B1.2, his starting base offense level is 14.**

Pursuant to Colorado Revised Statutes § 18-3-203(1)(b), an individual commits second degree assault with a deadly weapon if, "[w]ith intent to cause bodily injury, he or she causes such injury to any persons by means of a deadly weapon." Several of the terms used in the statute, however, do not carry their ordinary meanings. The phrase "bodily injury" is defined to mean "physical pain, illness, or any impairment of physical or

---

[2] At sentencing, a court may only consider evidence bearing "some minimal indicium of reliability beyond mere allegation". *United States v. Beaulieu*, 893 F.2d 1177, 1181 (10th Cir. 1990); *accord* U.S.S.G. § 6A1.3 (evidence used at sentencing must have "sufficient indicia of reliability to support its probable accuracy").

mental condition," Colo. Rev. Stat. § 18-1-901(3)(c), such that the term "serious bodily injury" also has been interpreted to "encompass a 'mental condition' that, either at the time of the actual injury or at a later time, involves . . . a substantial risk of protracted loss or impairment of the function of any part or *organ of the body*," potentially including post-traumatic stress disorder, *People v. Larks*, No. 20CA1060 at 6 ¶ 13 (Colo. Ct. App. Nov. 12, 2020) (unpub.) (quoting Colo. Rev. Stat. § 18-1-901(3)(p)). The definition of "deadly weapon" is also unusually broad, covering not only firearms and weapons but any "device, instrument, material, or substance, whether animate or inanimate, that, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury." *Id.* § 18-1-901(e); *see also People v. Saleh*, 45 P.3d 1272, 1273 (Colo. 2002) ("Any object, including a foot, may be a deadly weapon depending on the manner in which it was used."). When these statutory definitions are taken into account, they render the offense of Colorado second degree assault with a deadly weapon categorically overbroad under both the elements clause and the enumerated offenses clause of § 4B1.2(a).[3]

### a. Legal Standard

This Court applies the categorical approach to determine whether a particular offense qualifies as a "crime of violence" for purposes of the guidelines. *See United States v. Winder*, 926 F.3d 1251, 1253 (10th Cir. 2019). Under this approach, an

---

[3] *United States v. Ontiveros*, 875 F.3d 533 (10th Cir. 2017), concerned a different second degree assault offense with different elements—specifically, the offense at issue in that case occurs when "[a] person . . . , '[w]ith intent to cause bodily injury to another person . . . causes serious bodily injury to that person or another.'" *Id.* at 535 (quoting Colo. Rev. Stat. 203(1)(g)). Because *Ontiveros* addresses a wholly different crime, its holding that Colorado second degree assault is a crime of violence does not control the outcome of this case.

offense qualifies as such only if an examination of its elements (and not the underlying facts) reveal that it *necessarily* required the "use, attempted use, or threatened use of physical force against the person of another" within the meaning of § 4B1.2(a)(1), or was an offense enumerated in § 4B1.2(a)(2). Colorado second degree assault with a deadly weapon qualifies under neither provision.

> **b. Colorado second degree assault with a deadly weapon does not require the use, attempted use, or threatened use of physical force because the statutory definition of "bodily injury" includes mental impairment.**

Colorado second degree assault with a deadly weapon does not require the "use, attempted use, or threatened use of force" because it does not require the use of "force capable of causing *physical pain* or *injury* to another person." *Winder*, 926 F.3d at 1254 (quoting *Johnson v. United States*, 559 U.S. 133, 138 (2010)) (emphasis added). A physical injury is ordinarily understood to mean "[p]hysical damage to a person's body," Injury, *Black's Law Dictionary* (11th ed. 2019), as opposed to an injury to "the mind or soul or the emotions," *State v. McCoy*, 421 N.W.2d 107, 111 (Wis. 1988) (quoting *Black's Law Dictionary* (4th rev. ed. 1968)). Thus, in *United States v. Burris*, 912 F.3d 376 (2019), the *en banc* Sixth Circuit held that Ohio assault statutes that could be violated by conduct that caused only *mental* harm did not have as an element the use, attempted use, or threatened use of violent, *physical* force. *See id.* at 399. Likewise, in *United States v. Ross*, No. CR 13-29-BLG-BMM, 2017 WL 1288425 (D. Mont. Apr. 6, 2017), a District of Montana judge held that a Montana family assault offense that could be violated by the causation of "*mental* illness or impairment" did not have as an element the use, attempted use, or threatened use of violent physical force. *Id.* at *4 (emphasis added). Like the Ohio offenses at issue in *Burris* and the Montana offense at

- 4 -

issue in *Ross*, Colorado second degree assault by a deadly weapon does not require the use of force capable of causing such *physical* pain or injury, but only conduct capable of causing *mental* impairment, see Colo. Rev. Stat. § 18-3-203(1)(b); *id.* § 18-1-901(3)(c). Because the offense can thus be committed without the exercise of force capable of causing *physical* pain or injury, it does not categorically qualify as a "crime of violence."

That is so notwithstanding the fact that Colorado second degree assault with a deadly weapon has as an element the use of a "deadly weapon." While the Tenth Circuit has held that a New Mexico statute requiring employment of a "deadly weapon" "necessarily threatens the use of physical force, *i.e.*, 'force capable of causing physical pain or injury to another person,'" *United States v. Maldonado-Palma*, 839 F.3d 1244, 1250 (10th Cir. 2016) (quoting *Johnson*, 559 U.S. at 140), the Colorado second degree assault offense at issue in this case is distinguishable from the New Mexico aggravated assault offense at issue in *Maldonado-Palma*. As the Tenth Circuit emphasized in that case, New Mexico defines the term "deadly weapon" to mean "any firearm . . . ; or any weapon which is capable of producing death or great bodily harm . . . ; or any weapons with which dangerous wounds can be inflicted." 839 F.3d at 1250 (quoting N.M. Stat. Ann. § 30-1-12(B)). The New Mexico offense is, in other words, limited to weapons that are capable of causing serious *physical* harm to others. The same is true of the offenses at issue in *United States v. Taylor*, 843 F.3d 1215, 1224 (10th Cir. 2016) (holding that Oklahoma offense requiring use of "dangerous weapon" capable of causing "death or bodily harm" was a "crime of violence"), and *United States v. Benton*, 876 F.3d 1260, 1263-64 (10th Cir. 2017) (holding that Kansas offense requiring use of a

"deadly weapon" "calculated or likely to produce death or serious bodily injury" was a "crime of violence"). Colorado law, by contrast, broadly defines "deadly weapon" to include "[a]ny object, including a foot," Saleh, 45 P.3d at 1273, and reaches beyond objects capable of causing physical harm to objects capable of causing *mental* impairments, see Colo. Rev. Stat. §§ 18-1-901(3)(c), (p). Because statutory definition of "deadly weapon" encompasses objects capable of causing only *mental* harm, the use of a "deadly weapon" within the meaning of the statute does not necessarily involve the threatened use of violent, physical force and does not render the Colorado offense a "crime of violence" within the meaning of § 4B1.2(a)(1).

### c. Colorado second degree assault with a deadly weapon does not require the use, attempted use, or threatened use of physical force *against the person of another*.

The offense also does not require the use, attempted use, or threatened use of physical force *against the person of another*, as required in order to satisfy the elements clause contained in § 4B1.2(a)(1). As the plain language of § 4B1.2(a)(1) states, the provision applies only if the offense "has as an element the use, attempted use, or threatened use of physical force *against the person of another*." Colorado second degree assault with a deadly weapon, however, only requires proof that the defendant caused bodily injury (which, in Colorado, includes mental impairment); there is no requirement that the bodily injury be inflicted by means of the use, attempted use, or threatened use of physical force "against the person of another" as required by the guideline. See Colo. Rev. Stat. § 18-3-203(1)(b). That is, the offense focuses on the *result* of the defendant's conduct, whereas the guidelines focus on the *means* by which that result is to occur.

Colorado courts, moreover, have held that this kind of offense does *not* require the proof that the defendant used physical force against the person of another, but can be committed through the failure to act alone. In *People v. Madison*, 176 P.3d 793 (Colo. App. 2007), for example, the Colorado Court of Appeals affirmed a conviction for second degree assault upon an at-risk adult, Colo. Rev. Stat. §§ 18-3-203(1)(g), 18-6.5-103(1) & 3(b), finding that the defendant "caused serious bodily injury" within the meaning of the statute by leaving his elderly "father . . . bedridden without a change of clothing and without appropriate toileting or hygiene," thereby allowing bedsores to develop and fester, and by "fail[ing] to seek any kind of professional care" for his father, despite knowledge that his father suffered from serious medical conditions. *Id.* at 798. That the defendant himself never used, attempted to use, or threatened to use violent, physical force against his father was immaterial; all that was required was that the defendant's conduct *resulted* in a particular injury. Like the assault at issue in *Madison*, Colorado second degree assault with a deadly weapon does not require the use of force against the person of another, but instead requires only that the defendant's conduct *result* in a particular injury. In this way, it is categorically broader than the elements clause contained in § 4B1.2(a)(1).

Although the Tenth Circuit previously rejected this reasoning in *United States v. Ontiveros*, 875 F.3d 533 (2017), that decision was wrong and has been abrogated by *Borden v. United States*, 141 S. Ct. 1817 (2021). In *Ontiveros*, the Tenth Circuit relied on the Supreme Court's decision in *United States v. Castleman*, 572 U.S. 157 (2014), to conclude that the causation of physical injury necessarily entails the use of physical force within the meaning of the guidelines. *See Ontiveros*, 875 F.3d at 537. But

*Castleman* involved a different statutory provision using different language—specifically, that decision interpreted the "misdemeanor crime of domestic violence" provision contained in 18 U.S.C. § 922(g)(9). Critically, unlike the guideline provision at issue here, § 922(g)(9) requires only that the offense require "the use or attempted use of physical force"—and does *not* require that the relevant "use of physical force" to be "against the person of another." Compare 18 U.S.C. §§ 922(g)(9), 921(a)(33)(A), *with* U.S.S.G. § 4B1.2(a)(1). As the Supreme Court subsequently emphasized in *Borden*, the phrase "against the person of another" is not mere "window dressing" that may be ignored in order to extend the "logic" of § 922(g)(9) to other legal contexts.141 S. Ct. at 1833. On the contrary, as in *Borden*, this "difference in text yield[s] a difference in meaning." *Id.* While a "misdemeanor crime of domestic violence" under § 922(g)(9) need not involve the use of force against the person of another because the language of the statute does not require it, a "crime of violence" under § 4B1.2(a)(1) *must* involve the use of force "against the person of another" because the language of the guideline *does* explicitly require it. Because second degree assault with a deadly weapon does *not* require the use of physical force "against the person of another," it is not a "crime of violence" under § 4B1.2(a)(1).

### d. Colorado second degree assault with a deadly weapon is not generic aggravated assault because it includes assaults using body parts.

Colorado second degree assault with a deadly weapon also does not categorically qualify as a form of generic "aggravated assault" for purposes of the enumerated-offenses clause contained in § 4B1.2(a)(2). The Tenth Circuit has indicated that aggravated assault requires "either the causing of serious bodily injury or the use of a dangerous weapon." *United States v. Gastelum Laurean*, 370 F. App'x 938, 941 (10th

Cir. 2010) (unpub.). The challenged offense clearly does not require serious bodily injury, however that is defined. *See* Colo. Rev. Stat. § 18-3-203(1)(b) (requiring causation of only "bodily injury"). The challenged offense does not satisfy the generic definition of aggravated assault under the deadly weapon prong either.

For purposes of the enumerated offenses clause contained in §4B1.2(a)(2), generic assault with a "deadly weapon" categorically excludes offenses that can be committed by use of a body part. To determine the scope of a generic offense—that is, an offense as it was commonly understood at the time the provision was enacted—this Court looks to how the offense is defined in the majority of states, as well as secondary sources such as the Model Penal Code, dictionaries, and treatises. *See Taylor v. United States*, 495 U.S. 575, 598 (1990) (defining generic burglary for purposes of the ACCA); *United States v. O'Connor*, 874 F.3d 1147, 1151 (10th Cir. 2017) (defining generic robbery and extortion for purposes of § 4B1.2(a)(2)). Generic aggravated assault with a deadly weapon is commonly understood to require the use of a weapon other than a body part, as "[m]ost states have determined that body parts cannot be considered a dangerous or deadly weapon." *United States v. Rocha*, 598 F.3d 1144, 1155-56 (9th Cir. 2010) (collecting cases). Colorado, however, stands with the minority of states in holding that "[a]ny object, including a foot, may be a deadly weapon depending upon the manner in which it was used." *Saleh*, 45 P.3d at 1273. Because the Colorado definition of "deadly weapon" sweeps more broadly than the generic definition of the term, Colorado second degree assault with a deadly weapon does not qualify as aggravated assault for purposes of § 4B1.2(a)(2).

For the foregoing reasons, Mr. Thompson does not have a qualifying prior conviction for a crime of violence as that term is defined under U.S.S.G. § 4B1.2, and his base offense level should therefore be 14, not 20.

## II. Because Mr. Thompson did not use or possess the firearm in connection with a menacing and/or robbery offense, a U.S.S.G. § 2K2.1 (b)(6)(B) enhancement does not apply.

As is set forth in paragraphs 21 and 22 of the Presentence Report, the Probation Office applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) in this case. Mr. Thompson objects to this enhancement, and there is insufficient evidence upon which to base its application. U.S.S.G. § 2K2.1(b)(6)(B) mandates a four-level increase if a defendant:

> Used or possessed any firearm […] in connection with another felony offense; or possessed […] any firearm […] with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense.

In this case the enhancement is based upon the allegation that Mr. Thompson committed a felony menacing and/or robbery offense on October 22, 2021, as is described at ¶¶ 10-13; 42 of the Presentence Report. These allegations have led to Mr. Thompson being charged in Denver District Court case 2021CR6650. PSR ¶¶ 22; 42. There, he has entered not guilty pleas to each and every charge and allegation that has been leveled against him. PSR ¶ 42. Given Mr. Thompson's categorical denial of these charges, and the fact that he both enjoys the presumption of innocence and that he cannot meaningfully comment about these allegations without waiving his constitutionally protected right to silence in the pending state court matter, the Court should decline to apply the enhancement.

To the extent the Court does evaluate these allegations, as was previously noted *supra* at *n*.2, in order to protect a defendant's Due Process rights at sentencing, a court may only consider evidence bearing "some minimal indicium of reliability beyond mere allegation." *United States v. Beaulieu*, 893 F.2d 1177, 1181 (10th Cir. 1990); *accord* U.S.S.G. § 6A1.3 (evidence used at sentencing must have "sufficient indicia of reliability to support its probable accuracy"). Police reports do not automatically comprise the type of inherently reliable basis upon which a contested sentencing enhancement can or should lie. *See, e.g., United States v. Padilla*, 793 Fed.Appx. 749, 756-760 (10th Cir. 2019) (unpublished) (extensively discussing and collecting cases dealing with this issue); *see also United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013); *United States v. Fennell*, 65 F.3d 812 (10th Cir. 1995) (reversing district court where sentencing enhancement was based solely on hearsay statement). Thus the fact that serious, but unsworn, allegations have been memorialized in police reports or other documents is not dispositive; particularly when, as here, Mr. Thompson is hamstrung in his ability to rebut them given that the charges against him remain pending in a pre-trial posture in state court. In these circumstances, the Court cannot fairly, and thus should not, apply the four-level U.S.S.G. § 2K2.1(b)(6)(B) enhancement.

To the extent the Court disagrees, the Probation Office correctly points out that if the Court applies this enhancement, any sentence the Court ultimately chooses to impose *"shall be imposed to run concurrently to"* the anticipated sentence in Denver County District Court case 2021CR6650 pursuant to U.S.S.G. § 5G1.3(c) given that the Court would have found that these actions were relevant conduct as defined by U.S.S.G. § 1B1.3. PSR ¶ 83. Indeed, the Tenth Circuit reaffirmed the centrality of this

principle earlier this month when it reversed a trial court that had run only a portion of a federal sentence concurrently to an anticipated state sentence in contravention of § 5G1.3(c).  *See United States v. Blattel*, 2022 WL 2062461 (10th Cir. June 8, 2022) (unpublished).

Because Mr. Thompson's correct base offense level is 14, and because the U.S.S.G. § 2K2.1(b)(6)(B) enhancement does not apply, the adjusted offense level in this case is 12 (not 21 as the draft PSR calculates), and the applicable corresponding guideline range is 27 to 33 months of incarceration.[4]

## Objections That Do Not Impact the Guideline Range

Mr. Thompson makes the following further objections, modifications, and clarifications to the draft Presentence Report, none of which impact the calculation of the advisory guideline sentencing range:

**Page 2; "Race" identifying data:**  Mr. Thompson's father is Black and his mother is Hispanic.  He generally self-identifies as being of "mixed race" or as being Hispanic, but not as white.

**Paragraph 38**:  Mr. Thompson would simply add the following context to the recitation of the facts of the case:  that the scene was absolutely chaotic, that he panicked while trying to get the car off of Ms. Verdoza which caused her further injury, and that he ultimately assisted others in lifting the vehicle to extricate her.   He wants the Court to

---

[4] If the Court finds that his prior conviction constitutes a crime of violence such that his base offense level should be 20 pursuant to §2K2.1(a)(4)(A), but declines to add the (b)(6)(B) enhancement, Mr. Thompson's adjusted base offense level (after acceptance of responsibility) would be 17 and, with a criminal history category of V, his advisory guideline range would be 46 to 57 months of incarceration.

know that the events of that evening are indelibly etched in his brain and he thinks of them daily.

**Paragraphs 38, 48, 49, 60**:  Each of these paragraphs make reference to Alex Vardoza; the correct spelling of her last name is Verdoza.

**Paragraphs 38 and 49**:  The protective order related to King Thompson was modified on November 17, 2020 in Larimer County case 2016CR1037 so as to give Mr. Thompson visitation right with his son.  *See Exhibit A.*  Mr. Thompson shares custody of King with Ms. Verdoza.  PSR ¶ 49.

**Paragraph 46:**  Mr. Thompson would clarify the first sentence of this paragraph so as to make clear that his mother raised all of his siblings (not just him and his sister), with the assistance of his paternal grandparents.

**Paragraph 47**:  Mr. Thompson would clarify the 6th sentence of this paragraph so as to make clear that he believes that he has struggled to develop healthy and stable relationships with women in part because of what he observed from his father while growing up, and in part due to the events set forth in paragraph 55.

**Paragraph 49**:  Mr. Thompson's son, King, is currently 8 years old; he will turn nine on July 27, 2022.  Mr. Thompson's understanding is that his daughter, Julizza, is currently living with a foster family in Florida and not with her mother.

**Paragraph 50**:  Mr. Thompson's mother's new address is: 1199 Yuba Street, Aurora, Colorado 80011.  Mr. Thompson plans to live at this address upon his release.

WHEREFORE Mr. Thompson respectfully objects as detailed above to the presentence report.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Stephanie Snyder
Stephanie Snyder
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Stephanie.Snyder@fd.org
Attorney for Defendant

- 14 -

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Celeste Rangel, Assistant United States Attorney
Email: Celeste.Rangel @usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Joe Thompson (via U.S. Mail)

s/ Stephanie Snyder
STEPHANIE SNYDER
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Stephanie_Snyder@fd.org
Attorney for Defendant