IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No: 21-cr-00421-CMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.  JOE THOMPSON,

        Defendant.

---

**RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT**

---

The United States of America, by and through Cole Finegan, United States Attorney for the District of Colorado, and Celeste Rangel, Assistant United States Attorney, hereby respectfully responds to Defendant's Objections to Presentence Report [ECF #31].  For the following reasons, the defendant's objections should be overruled.

**A.  The base offense level should be 24**

1.      The defendant objects to probation's guideline calculations and its conclusion that the base offense level is 20 pursuant to § 2K2.1(a)(4)(A).  The government has objected to probation's calculations and believes that the defendant has sustained two felony convictions of crimes of violence and the proper base offense level is 24 pursuant to § 2K2.1(a)(2).  *See* ECF #32.  But even if the Court overrules the government's objection, the defendant still has a prior crime of violence conviction, specifically his conviction for Second Degree Assault in Larimer County District Court case 16CR1037.

2.      Pursuant to § 2K2.1, cmt. n.1, "crime of violence has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2."  Section 4B1.2(a)

sets out two ways a felony conviction can be a crime of violence.  The conviction can satisfy the force clause under § 4B1.2(a)(1) or it can be an enumerated offense under § 4B1.2(a)(2).

3.      Colorado second degree assault qualifies under the force clause because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).  Physical force means force that is (1) "exerted by and through concrete bodies" and (2) "capable of causing physical pain or injury to another person."  *United States v. Fagatele*, 944 F.3d 1230, 1233 (10th Cir. 2019).

4.      The defendant's arguments have been squarely rejected by the Tenth Circuit.  *See United States v. Ontiveros*, 875 F.3d 533, 537 (10th Cir. 2017).  The *Ontiveros* Court rejected the same argument the defendant makes here.  In doing so, *Ontiveros* concluded that, in *United States v. Castleman*, 572 U.S. 157, 169 (2014), the Supreme Court "specifically rejected the contention that one can cause bodily injury without the use of physical force."  *Id.* at 536 (quotation omitted) (holding that distinction between result and means is "no longer viable in light of [*United States v. Castleman*, 572 U.S. 157 (2014)]"); *id.* at 538 ("To the extent that [*United States v.*] *Perez-Vargas*, [414 F.3d 1282 (10th Cir. 2005)] holds that indirect force is not an application of 'physical force,' that holding is no longer good law.").

5.      Colorado's second degree assault requires "the use, attempted use, or threatened use of physical force" against another person.  First, "'it is impossible to cause bodily injury without' using force that is physical." *Fagatele*, 944 F.3d at 1235 (quoting *Ontiveros*, 875 F.3d at 536-38).  Thus, "when actual bodily injury is an element of an

offense," as it is here, "so too is the actual use of physical force." *Id.* Second, that force must be violent: force that causes bodily injury to another person "is necessarily capable of causing physical pain or injury to another person." *Id.* at 1238. (quotation omitted).

6.      The Colorado definition of bodily injury to include impairment of a mental condition does not change the analysis.  It is difficult to conceive of a scenario in which one could knowingly or recklessly cause a mental impairment to another person without at least threatening the use of physical force.  And even if such a scenario might theoretically exist, there is no "realistic probability" that Colorado would apply its third-degree assault statute to such conduct. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *see also United States v. Winder*, 926 F.3d 1251, 1256 (10th Cir. 2019).

7.      Finally, the defendant's argument that Colorado second degree assault can be committed by failure to act was similarly rejected in *Ontiveros.*  875 F.3d at 538 ("Ontiveros next argues that even if *Castleman* applies, Colorado second-degree assault requires no 'use…of physical force' because one can be convicted for a failure to act…[and he] relies principally on *People v. Madison*, 176 P.3d 793 (Colo.App.2007)… We are not persuaded.").  The Tenth Circuit again pointed to *Castleman* and stated that "[i]f it <u>impossible</u> to commit a battery without applying force, and a battery can be committed by an omission to act, then second-degree assault must also require physical force." *Id.*

8.      Accordingly, the defendant's objection to the defendant's prior conviction for Colorado second degree assault as a crime of violence should be overruled.

**B. The in-connection enhancement is properly applied as the defendant robbed a man at gunpoint**

9.      The defendant next objects to probation's application of the four-level enhancement pursuant to § 2K2.1(b)(6)(B) for his robbery of a man on October 24, 2021. The defendant argues that this Court should refuse to apply the enhancement because he has pled not guilty to the charges in state court and because there is insufficient evidence to support the enhancement by a preponderance of the evidence.

10.     As is clear from the guidelines, it is immaterial if charges are even brought pertaining to an enhancement, much less if a conviction is obtained. Section 2K2.1, cmt. n. 14(C). The applicable burden of proof is preponderance of the evidence. *United States v. Robertson*, 946 F.3d 1168, 1171-72 (10th Cir. 2020) ("The Supreme Court has not adopted a heightened standard of proof at sentencing for contested facts, thus we hold that the correct standard of proof in this case was a preponderance of the evidence. This issue has been foreclosed in this Circuit.") (internal citations omitted). The evidence is clear that the defendant robbed a man at gunpoint and thus the enhancement is properly applied.

11.     On October 24, 2021, at 11:18 pm, Denver Police officers responded to a report of a robbery. *See* Exhibit 1; Exhibit 2. They met with the victim, Jason Richards., who had a visible cut to the left side of his mouth. *See id.*; *see also* Exhibit 3. Richards told officers that approximately 30 minutes earlier, he had gone to the Mobil gas station to get a vape pen and beer. *Id.* at Exhibits 1 and 2. Richards said that as he pulled into the parking lot of the gas station, he saw two vehicles blocking parking spots. *Id.* Richards drove around the vehicles and parked in an empty spot directly in front of the store. *Id.* Once Richards got out of his car to go into the store, someone began yelling at him that

he could have caused an accident.  *Id.*  Richards ignored this person and went into the store.  *Id.*  Once inside of the store, a man wearing a black baseball hat and a white jersey with a red #7 on it approached Richards and began arguing with him.  *Id.*  The man told Richards that he would be waiting for Richards outside of Richards' car.  *Id.*  Richards bought the vape pen and beer, left the store, and went to his car, where he saw this same man and two other men standing next to his car.  *Id.*  Richards got into his car and rolled down his window, where he then exchanged words with the men.  *Id.*  The man in the white jersey pulled out a Silver High Point pistol with a black handle, pointed it through Richards' window, and pressed it to Richards throat.  *Id.*  Richards stated that the man told Richards he was "lucky" and while the firearm was still pointed at Richards' throat, the man reached into Richards' vehicle and took the just-purchased vape pen from Richards' lap.  *Id.*  Richards was very scared by this and drove away.  *Id.*  After a short period of time, Richards decided to return to the gas station to purchase another vape pen.  *Id.*  Richards did so and when he arrived back at his home, he saw the same three men from the earlier altercation waiting outside of his apartment garage.  *Id.*  When Richards exited his car, the same man in the white jersey approached him, punched him twice in the face causing pain and injury.  *Id.*

12.     Detectives investigated the incident and went to the gas station to view video of the robbery.  *See* Exhibit 4; *see also* Exhibit 5.  Detective Eret confirmed Richards' version of events from the video and obtained the license plate from the vehicle the men entered and followed Richards after the robbery had occurred.  *Id.*  The vehicle was registered to the defendant's sister.  *Id.*  Detective Eret researched the defendant, due to his connection

to the registered owner of the vehicle, and found that he matched the description of the man who robbed and assaulted Richards.  *Id.* at Exhibit 4.  On October 27, 2021, Richards was shown a photographic lineup.  With confidence, he identified the defendant as the man in the white jersey who had robbed him at gunpoint and later assaulted him.  *See* Exhibit 6.

13.     On November 11, 2021, the defendant was arrested for the robbery.  He agreed to waive his *Miranda* rights and be interviewed.  The defendant admitted that he drove his sister's vehicle.  *See* Exhibit 4 and 7.  The defendant admitted to owning a Falcons jersey.  *Id.*  The defendant admitted to getting into an argument with a man at the gas station, but initially maintained it was solely a verbal altercation.  *Id.*  When the defendant was told that there was video of the incident, he ultimately admitted he had a gun, but claimed he had only shown it to the victim by lifting his shirt and showing the firearm on the defendant's hip.  *Id.*  At a minimum, the defendant's admission that he showed the firearm to the victim, combined with the victim's fear response, justify the application of the enhancement.  But the evidence is more than just the defendant's self-serving admission.

14.     Detective Eret received a search warrant for the defendant's sister's vehicle.  *See* Exhibit 4.  He located a backpack on the front passenger floorboard of the vehicle.  *Id.* Inside of that backpack was the firearm of conviction, loaded with 12 rounds and one round in the chamber.  *Id.*  This firearm matched the description provided by Richards, in that the firearm has a silver slide and black grip.  *See* Exhibit 8.

15.     Because the defendant possessed and used the firearm to rob Richards of his vape pen, a felony offense, the in-connection enhancement is properly applied.

**C. Remaining objections that do not impact the guideline range**

16.     The defendant adds context to the facts contained in ¶38, relating to his 2016 second degree assault conviction in Larimer County District Court case 16CR1037.  The defendant claims the scene was chaotic and that he panicked while trying to get the car off of Ms. Verdoza.  The defendant represents that he ultimately assisted others in lifting his car off of her.  The defendant states that he wants the Court to know that he thinks of those events daily.

17.     In response to the defendant's representations, the government obtained the incident report.  Notably, when the first responders arrived on scene, the defendant was in the driver's seat.  *See* Exhibit 9.  The defendant tried to leave the scene and when a fire captain tried to grab the car key in order to prevent the defendant from leaving the scene.  *Id.*  The defendant grabbed the fire captain's wrist and the fire captain then removed the defendant from the vehicle.  *Id.*

18.     Witnesses to the assault had difficulty describing the events to police officers, due to what they had seen.  *See* Exhibit 9.  One of the witnesses described the intentional nature of the defendant hitting Ms. Verdoza with his vehicle.  *Id.*  This witness ran to the car and yelled at the defendant to stop driving, but that the defendant kept "going back and forth, back and forth, back and forth," over Ms. Verdoza.  *Id.*  Specifically, this witness stated that the defendant fought him over the car key, as the defendant wanted to turn the car back on after the witness had turned it off.  *Id.*  The witness stated that the

defendant was able to get the car turned on and he again rocked the car back and forth with Ms. Verdoza underneath the vehicle.  *Id.*  At that time, the witness was hanging out the window, trying to get the defendant to stop rocking his vehicle back and forth over Ms. Verdoza and the defendant was hitting the witness.  *Id.*  The witness believed he was ultimately able to rip the key in half and that the defendant got out of the vehicle and came after the witness, thinking the witness had the key.  *Id.*  The witness said the defendant got back into the car, started it again, and tried to drive.  *Id.*  This witness called 911 and ultimately put his phone down to help the other people who arrived to help lift the defendant's vehicle off of Ms. Verdoza.  *Id.*  The witness stated that there were at least six men on the driver's side of the vehicle trying to lift the vehicle as the defendant continued to try to drive away.  *Id.*  Another witness who helped lift the defendant's vehicle off of Ms. Verdoza stated that a woman was able to drag Ms. Verdoza clear of the defendant's vehicle.  *Id.*  Once the bystanders were able to get the vehicle off of Ms. Verdoza, the original witness told people to detain the defendant because he was still trying to leave the scene.  *Id.*  This witness and a firefighter fought with the defendant to get him out of the vehicle and prevent him from leaving the scene.  *Id.*

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: *s/Celeste Rangel*
CELESTE RANGEL
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: (303) 454-0100
Fax: (303) 454-0405
E-mail:celeste.rangel@usdoj.gov
Attorney for the government

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2022, I electronically filed RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENCE REPORT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties on record.

*s/Celeste Rangel*
CELESTE RANGEL
Assistant United States Attorney